Maher *v.* New Castle Grocery Company et al., Appellants.

Argued December 15, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*Samuel G. Wagner,* of *Wagner & Wagner,* and *George Y. Meyer* and *Matthews & Jamison,* for appellants.

*John S. Powers,* with him *Leroy K. Donaldson,* for appellee.

Opinion by Keller, P. J., January 30, 1940:

The claimant, T. F. Maher, on December 28, 1934, was employed by New Castle Grocery Company (a wholesale grocery corporation) as bookkeeper and credit man, and in connection with that employment had charge of the collection of accounts. For organization purposes he had been elected secretary (or treasurer, which is not clear) of the company, but received no compensation as such. He was paid a salary as bookkeeper and credit man. He was hit by an automobile on December 28, 1934 while in Youngstown, Ohio, resulting in a broken right arm and crushed right leg.

Sometime in March 1935—the day is not stated—the parties, (claimant, employer and insurance carrier), signed what purported to be a compensation agreement, which was approved by the Bureau of Workmen's Compensation on May 7, 1935. The blank was so incompletely and improperly filled out that it should not have been approved in that form. But from it one is able to gather that claimant was employed at a salary of $135 a month, or $1620 a year. From this the following was deduced:

"A. Total earnings $10.00 divided by 143 days equals $5.61 daily wage of $5.61 multiplied by 5½ = weekly wage $30.86". It stated, "6. The occupation is ...... seasonal," when everybody admitted it was not seasonal; and the amount to be paid claimant weekly "beginning June 5 - 35" [why June 5, 1935, instead of January 5, 1935?] was left blank; and it was not stated whether compensation was payable under section 306(a) for total disability, or 306(b) for partial disability, or 306(c) for permanent loss of a member. The paper was blank as to the amount due for medical and hospital services and as to the compensation due claimant at date of agreement.

Nevertheless, it appears that claimant was paid $15 a week compensation under the agreement until December 13, 1935, when the employer, by its insurance

carrier, filed a petition asking the Workmen's Compensation Board to review the agreement, alleging that it had recently learned that the claimant was not actually engaged in the furtherance of the business or affairs of the employer at the time of his injury, and that the agreement had been executed under a mistake of fact.

In the meantime, on December 9, 1935, as a result of the injury the claimant's right leg had been amputated about seven inches below the knee, entitling him, under section 306(c), as amended by Act of April 13, 1927, P. L. 186, pp. 187 and 188 to compensation at $15 a week for 150 weeks for the loss of a foot, for the amputation was between the knee and the ankle.

The claimant having filed an answer denying the averments of the petition, the case was referred to a referee, who found that the agreement had not been executed under a mistake of fact and dismissed the petition. On appeal to the board, that body very properly sent the case back to the referee for additional testimony, for the evidence had been somewhat meager. On the second hearing, the evidence was fuller and supported a finding that claimant, who had authority to do so, had requested a salesman of the company to take him in one of the company's cars to Youngstown, Ohio, on business for the company; that he went to see an attorney for the company there, about an account placed in his hands, which was in bankruptcy or receivership, and also to see a customer of the company, as to whose payments to the company there had been some dispute, which had been adjusted five or six weeks before, but who might still be somewhat nettled because of the incident; that he went to Youngstown on the company's business and for no private purpose of his own; that he had full charge of all accounts and authority—the president of the company said—to do this and that he had done it a great many times before; and that while waiting for the salesman (who had gone off to make a

call) to come back for him with the automobile, he had been knocked down and injured.

The testimony at the second hearing was ample to sustain an award of compensation, and the referee dismissed the petition. His findings of fact, conclusions of law and order of dismissal were affirmed by the board and, on appeal to the common pleas, by the court below.

We are in accord with this action, except that, it having appeared on the hearing that the claimant on December 9, 1935 suffered the loss of a foot, the agreement should be modified so as to limit compensation for any or all disability arising out of or resulting from such loss to 150 weeks from January 5, 1935. Since the oral argument the parties have entered into the following stipulation and agreement, to be added to the record with the same force and effect as though found by the Workmen's Compensation Board at and as a result of the hearing August 18, 1936.

## "ADDITIONAL FINDING OF FACT AND CONCLUSION OF LAW

The alleged injury received by the claimant on December 28, 1934, resulted in the amputation of the right foot about six inches below the knee; all other alleged injuries to the claimant healed up without any resulting disability. There are no injuries, disability or loss of earning power separate and apart from the industrial loss of the right foot."

Subject to the above modification, the order is affirmed.